UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ANGELA DAVIS, on behalf of the estate of ) <br> CRYSTAL PRICE and minor D.H., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ROANE COUNTY, TENNESSEE, and ) <br> SOUTHERN HEALTH PARTNERS, INC., ) <br> ) <br> Defendants. ) <br> ) | No.: 3:12-CV-634-TAV-CCS <br><br><br><br><br><br><br><br><br><br> *Consolidated with* |
| J.V., a minor, individually and on behalf of ) <br> CRYSTAL MARLENA PRICE, deceased, ) <br> as Child and next of kin, by ) <br> JESUS VARGAS, Parent and sole guardian, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ROANE COUNTY, ROANE COUNTY ) <br> SHERIFF'S OFFICE; SHERIFF JACK ) <br> STOCKTON, in his official capacity; and ) <br> SOUTHERN HEALTH PARTNERS, INC., ) <br> ) <br> Defendants. ) | <br><br><br><br><br><br><br><br> No.: 3:12-CV-673-TAV-CCS |

## **MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02. Now before the Court are various <u>Daubert</u> challenges posed by both the Plaintiffs and the Defendants. The parties presented oral arguments on these challenges to the Court on September 3, 2015. Thereafter, this case was submitted to mediation, but the mediation was not successful, [Doc. 206]. Thus, the Court finds that these challenges are now

ripe for adjudication, and for the reasons set forth herein, they will be **GRANTED IN PART** and **DENIED IN PART**.

I.  **BACKGROUND**

For purposes of the instant motion,[1] only the most basic parameters of this case are relevant: Decedent Crystal Price was incarcerated in the Roane County Jail starting on approximately December 10, 2011. Ms. Price remained in the Roane County Jail, and she was provided medical care during her stay at the Roane County Jail. On December 30, 2011, at approximately 8:00 a.m., she was found unresponsive in her cell. She was pronounced dead at the Roane County Medical Center later the same morning.

Plaintiffs have brought Constitutional claims on Ms. Price's behalf, pursuant to 42 U.S.C. § 1983, relating to her medical care and treatment at the Roane County Jail.

During the relevant period, Defendant Roane County, Tennessee contracted with Defendant Southern Health Partners, a private corporation, to provide medical services to inmates at the Roane County Jail.

II. **ANALYSIS**

Federal Rule of Evidence 702 governs the admission of expert testimony. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

---

[1] The Defendants have filed motions for summary judgment, to which the Plaintiffs have responded in opposition. The statement of the basic facts relating to the instant motion should not be interpreted as a finding of fact with relation to the dispositive motions pending before the Chief District Judge.

principles and methods, and (3) the witness has applied the
principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), the Supreme Court of the United States stated that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." <u>Id.</u> at 589. The <u>Daubert</u> standard "attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." <u>Best v. Lowe's Home Ctrs., Inc.</u>, 563 F.3d 171, 176–77 (6th Cir. 2009).

The factors relevant in evaluating the reliability of the testimony, include: "whether a method is testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the method is generally accepted within the scientific community." <u>Coffey v. Dowley Mfg., Inc.</u>, 187 F. Supp. 2d 958, 970-71 (M.D. Tenn. 2002) (citing <u>Daubert</u>, 509 U.S. at 593–94). "Although Daubert centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." <u>Rose v. Sevier Cnty., Tenn.</u>, No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 138-39 (1999)). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." <u>Coffey</u>, 187 F. Supp. 2d at 70-71 (quoting <u>Daubert</u>, 509 U.S. at 593-94).

The Rule 702 inquiry as "a flexible one," and the <u>Daubert</u> factors do not constitute a definitive checklist or test. <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 138-39 (1999)

3

(citing Daubert, 509 U.S. at 593). Although the Rule 702 requirements are treated liberally, "'that does not mean that a witness is an expert simply because he claims to be.'" Coffey v. Dowley Mfg., Inc., 187 F. Supp. 2d 958, 971 (M.D. Tenn. 2002) (citing Pride v. BIC Corp., 218 F.3d 566, 577 (6th Cir. 2000)).

The holding in Berry v. City of Detroit, 25 F.3d 1342 (6th Cir. 1994), is especially relevant to the challenges before the Court. Therein, the Court of Appeals held that expert testimony expressing legal conclusions or defining legal terms should be excluded. Id. at 1353-54. In so holding, the Court of Appeals provided the following example:

> Although an expert's opinion may "embrace[] an ultimate issue to be decided by the trier of fact[,]" Fed. R. Evid. 704(a), the issue embraced must be a factual one. The expert can testify, if a proper foundation is laid, that the discipline in the Detroit Police Department was lax. He also could testify regarding what he believed to be the consequences of lax discipline. He may not testify, however, that the lax discipline policies of the Detroit Police Department indicated that the City was *deliberately indifferent* to the welfare of its citizens.

Id. at 1353 (emphasis in the original). Consistent with the holding in Berry, "[c]ourts have permitted experts to testify about discrete police-practice issues when those experts are properly credentialed and their testimony assists the trier of fact." Champion v. Outlook Nashville, Inc., 380 F.3d 893, 908 (6th Cir. 2004).

**A.    Testimony of Michael T. McCormack, M.D.**

Dr. McCormack has been retained by Plaintiffs to offer expert testimony in this case. He did not treat Ms. Price but has reviewed relevant records. Dr. McCormack's opinion can be summarized as follows:

> Ms. Cristal [sic] Price was clearly evaluated and treated in a sub-standard manner for her respiratory condition while in the custody of the Roane County Correctional Facilities over the period of time from 12/10/2011 through 12/30/2011 which ultimately resulted in

4

> her death. Ms. Price was evaluated and treated by a health care practitioner unqualified to provide the attempted diagnostic and therapeutic interventions while the patient's condition progressively worsened, and to which the patient eventually succumbed. By a review of the provided documents, appropriate medical care was repeatedly denied Ms. Price with insufficient and excessively delayed diagnostic and therapeutic interventions, and the lack of an appropriately trained and qualified medical practitioner being directly involved in her care.
>
> . . . . The lack of medical follow up for 4-5 days is an egregious act of medical negligence [and] was directly related to Ms. Price['s] death.
>
> It is my medical opinion, that Ms. Price's medical management falls far below the accepted standard of medical care, and that this negligence and mismanagement was responsible for her death. With appropriate care, Ms. Price would have been expected to have survived her respiratory illness without significant sequelae to have allowed her to continue without functional impairment or diminished quality of life.

[Doc. 166-1 at 12-13].

Defendants[2] argue that Dr. McCormack should be barred from providing any expert testimony that Roane County could be held liable for Plaintiffs' claims under state or federal law. [Doc. 166]. Defendants argue that Dr. McCormack should be barred from providing any expert testimony stating that Roane County was deliberately indifferent to Ms. Price's condition. Defendants maintain that Dr. McCormack should be barred from providing any expert testimony that Roane County committed a wrongful act regarding Ms. Price's injuries. Additionally, Defendant SHP argues that Dr. McCormack should be excluded from testifying in this case because he does not have correctional healthcare experience. [Doc. 160].

---

[2] Rather than separating its *Daubert* challenges into independent motions, Defendant SHP combined three challenges into a single motion, moving the Court to exclude Dr. Ayo, Dr. McCormack, and Ms. Wild. The Court has reviewed this motion as well and will note any relevant difference between the combined challenge filed by SHP and the individual *Daubert* motions filed by the Roane County Defendants.

Initially, the Court finds that the Defendants have not challenged Dr. McCormack's education, which includes a medical degree from the University of Southern California. [Doc. 87-1]. Instead, the Defendants take issue with Dr. McCormack's lack of experience in a correctional facility. The Court finds that this challenge is not supported or well-founded.

At the hearing of this matter, it appeared that counsel for SHP proposed that correctional healthcare was such a specialized area of medicine that experts were required to have specialized in correctional healthcare in their career or face exclusion under Rule 702. Given the gravity of this assertion and the lack of legal support for this assertion contained in SHP's brief, the Court allowed SHP's counsel to file a supplemental brief on this issue [Doc. 201].

The Court has reviewed this brief and finds, based upon SHP's brief and the Court's own research, that there is no binding authority from the Court of Appeals for the Sixth Circuit that requires that a physician be excluded from testifying regarding medical incidents occurring in a prison simply because he or she has not practiced medicine in a correctional facility. To the contrary, the first case cited by SHP largely considers the physician's obtaining medical degree from a reputable university, family-practice residency, years working in emergency rooms and cardiac and pediatric practices, rather than his time working as the clinical director for the Bureau of Prisons, in finding that the physician's testimony was admissible in a medical tort claim that occurred in prison. Watson v. United States, 485 F.3d 1100, 1106 (10th Cir. 2007). The remainder of the cases cited by SHP are equally unpersuasive, see, e.g., Gayton v. McCoy, 593 F.3d 610, 618 (7th Cir. 2010) (finding that a physician was an expert in the area of prison health care but not indicating any bright-line rule that would require wholesale exclusion where there was a lack of knowledge regarding prisons). While the Court has considered Dr. McCormack's lack of experience in correctional institutions, the Court is not prepared to exclude

6

his testimony on this basis, especially, when he offers opinions regarding medicine and does not purport to opine about the correctional procedures. The Court cannot endorse the seemingly, bright-line rule requiring exclusion that is proposed by SHP. Instead, any lack of exposure to correctional facilities would be most appropriately addressed through cross-examination and other trial practices. See Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

With regard to testimony regarding deliberate indifference, the Court finds that this argument is largely hypothetical. There is nothing in Dr. McCormack's report that indicates he expects to so testify, but in his deposition, Dr. McCormack indicated a willingness to use such if he was asked to by Plaintiffs' counsel. [Doc. 166-2 at 6]. Given this willingness, the Court finds that an opinion in this regard would not be wholly advisory. Under the circumstances of this case and the holding in Berry, the Court finds that such testimony could potentially be violative of Rule 702. However, Dr. McCormack may offer the testimony described in his expert report and the testimony generally related thereto, but Dr. McCormack may not testify that the actions, either of Roane County or SHP, were deliberately indifferent, in a legal sense, and, thus, violative of the Constitution. He may testify regarding the nature, extent, and quality of the medical care Ms. Price received and opine regarding the effect and cause of her death.

Finally, with regard to Defendants' request that Dr. McCormack be precluded from offering testimony regarding its liability or regarding whether it committed wrongful acts that proximately caused injuries, the Court finds that this request is wholly hypothetical. Defendants have not directed the Court to any portion of Dr. McCormack's report or deposition testimony in which he purported to offer testimony regarding liability or whether acts were considered

7

wrongful under applicable law and proximately caused injuries.  Thus, it appears that Defendants seek a court-endorsed reminder reiterating the limits of expert testimony to Dr. McCormack and Plaintiffs' counsel.  The Court declines to offer such an advisory opinion, but the undersigned is confident that the Chief District Judge will ably apply the Federal Rules of Civil Procedure and applicable law, especially the Court of Appeals' holding in <u>Berry</u>, should Dr. McCormack attempt to offer such testimony at trial.

Accordingly, the Defendants' request that Dr. McCormack be excluded from offering testimony in this case is **GRANTED IN PART** and **DENIED IN PART**.  Dr. McCormack may testify regarding the medical care provided to Ms. Price by the Roane County Jail, consistent with the above, but he may not opine that the Defendants were deliberately indifferent.

**B.     Testimony of Raye-Anne B. Ayo, M.D.**

Dr. Ayo has been retained by Plaintiffs to offer expert testimony in this case.  She did not treat Ms. Price but has reviewed relevant records.  Dr. Ayo offers two opinions in her report, along with an overarching conclusion.  [Doc. 163-1 at 5-6].  She opines that, given her medical history, Ms. Price should have been further evaluated with regard to her medical issues.  Dr. Ayo also opines that there were "multiple" instances in which Ms. Price's physical symptoms were significant enough to warrant further medical care, and she concludes that some of the treatment rendered fell below the standard of care.  Overall, Dr. Ayo opines that Ms. Price's condition deteriorated while in custody and was undertreated.  She opines that Ms. Price should have been transferred from the Roane County Jail and that a physician should have been contacted about her medical issues.

Defendants argue that Dr. Ayo is an expert in family medicine and has no certifications in correctional healthcare.  [Docs. 159, 162].  Defendants argue that Dr. Ayo has no understanding

of how healthcare is rendered at the Roane County Jail. Moreover, Defendants argue that Dr. Ayo does not have specialized knowledge that would aid the jury in determining if a constitutional violation occurred. Defendants argue that Dr. Ayo should be excluded from offering testimony that "Roane County or its officers did anything wrong" or that they "caused or proximately caused" Ms. Price's injuries and/or death.

Plaintiffs respond that the fact that Dr. Ayo has never worked as a physician in a jail setting goes to the weight, not the admissibility, of his opinions. [Doc. 189]. Further, Plaintiffs argue that Defendants opinions relate to what should have been done to avoid Ms. Price's death from a medical standpoint. Plaintiffs maintain that the fact that Ms. Price was in jail does not alter these medical opinions.

The Court has considered the parties' positions, along with the applicable law, and the Court finds that the Defendants' challenge to Dr. Ayo's testimony is not well-taken. Dr. Ayo is qualified to testify regarding medical care that she believes should have been provided in response to Ms. Price's symptoms. The Defendants have challenged Dr. Ayo's experience, but not her medical credentials – doctor of medicine from Louisiana State University; board-certified family physician. Thus, the Court initially finds that Dr. Ayo has obtained appropriate medical education to offer the opinions at issue. Further, the Court finds that she has experience in the medical field sufficient to deem her an expert in medical care, especially initial treatment. The Court finds that Dr. Ayo's testimony does not express legal conclusions, though as with Dr. McCormack above, Dr. Ayo would be excluded from offering any testimony that Defendants were deliberately indifferent, in a legal sense.

Consistent with the findings above, the Court finds that the fact that she has not practiced medicine in a prison setting goes to the weight afforded to her testimony, rather than to its

9

Case 3:12-cv-00634-TAV-CCS   Document 209   Filed 11/04/15   Page 9 of 18   PageID #: 2247

admissibility. This critique of Dr. Ayo's opinions is best addressed through cross-examination and other trial strategy. See Daubert, 509 U.S. at 596.

Again, the Court finds that the Defendants have not directed the Court to any basis for concluding that Dr. Ayo intends to offer testimony regarding liability or wrongful acts and proximate cause, and therefore, the undersigned declines to provide hypothetical rulings on such challenges.

Accordingly, the Defendants' request that Dr. Ayo be excluded from offering testimony in this case is **GRANTED IN PART** and **DENIED IN PART**. Dr. Ayo may testify regarding the medical care provided to Ms. Price by the Roane County Jail, consistent with the above, but she may not opine that the Defendants were deliberately indifferent.

**C.     Testimony of Kathryn J. Wild, RN, MPA, CCHP**

Ms. Wild has been retained by Plaintiffs to offer expert testimony in this case. She did not treat Ms. Price but has reviewed relevant records. Ms. Wild offers a lengthy report detailing her opinion regarding the care that was provided to Ms. Price at the Roane County Jail. Her testimony is summarized by the Plaintiffs, the proponents of the testimony, who explain that Ms. Wild opines: "that the jail medical staff, which consisted entirely of licensed practical nurses, were unqualified to deliver appropriate medical care to Crystal Price; that it violates every applicable standard of correctional healthcare to allow LPNs to diagnose and treat medical conditions, as was done here, without direct physician supervision; that the LPNs recklessly failed to obtain appropriate medical care for Ms. Price; and that the LPNs failed to monitor, whatsoever, Ms. Price's deteriorating condition from December 25, 2011 to December 30, 2011, the day she died." [Doc. 188 at 1].

Defendants argue that Ms. Wild's opinions will not assist in deciding the issues in this case. [Doc. 165]. As they did with Dr. McCormack and Dr. Ayo, Defendants move the Court to bar Ms. Wild from offering testimony: regarding legal conclusions, regarding liability, and proximate causation. Defendant SHP concedes that "Ms. Wild is imminently experienced in correctional healthcare." [Doc. 160 at 10]. However, SHP argues that Ms. Wild is not qualified to give testimony regarding the standard of care under Tennessee law, and SHP maintains that Ms. Wild improperly opines that healthcare and correctional personnel were deliberately indifferent to Plaintiffs' serious medical needs.

Plaintiffs respond that Ms. Wild has extensive experience in the areas which she proposes to offer testimony. Plaintiffs maintain that Ms. Wild is qualified to offer testimony regarding whether the care rendered was below state-law standards. Specifically, Plaintiffs argue that the "locality rule," which limits medical expert testimony in medical malpractice cases to experts from contiguous states, is not applicable in the instant suit because Plaintiffs are not presenting a claim for medical malpractice. Further, Plaintiffs argue that the use of the term "deliberately indifferent" is unavoidable. Plaintiffs maintain that all of Defendants' critiques are best addressed through cross-examination.

Again, the Court finds that Ms. Wild's qualifications are not in dispute, and to the contrary, SHP, at least, finds Ms. Wild to be "imminently experienced." The Court has reviewed and considered both Ms. Wild's education and her experience, and the Court finds that she is competent to offer opinion testimony regarding the nature and extent of the medical treatment that Ms. Price received from nurses during her stay at the Roane County Jail.

The Court finds that Ms. Wild may not testify that the Defendants or their employees or agents were deliberately indifferent to Ms. Price's condition and medical needs. Under the

circumstances of this case and the holding in Berry, the Court finds that such testimony would essentially be a legal conclusion beyond her expertise and violative of Rule 702. Ms. Wild may offer the testimony described in her expert report and the testimony generally related thereto. However, Ms. Wild may not testify that the actions, either of Roane County or SHP, were deliberately indifferent to Ms. Price's needs or that they violated the Constitution. Rather she may opine on the medical care, and the jury will decide if that does or does not rise to the level of deliberate indifference.

Defendants also argue that Ms. Wild's testimony regarding care falling below applicable standards is barred by Berry. The Court is not convinced that the locality rule or other medical malpractice standards would preclude Ms. Wild from offering such testimony, nor is the Court convinced that this testimony is barred by Berry as a legal conclusion. Instead, the Court finds that Plaintiffs have demonstrated that Ms. Wild is qualified to testify regarding the applicable standard of care in correctional facilities and correctional healthcare[3] and that her testimony on this issue is relevant to the Constitutional claims presented in this case and the deliberate indifference standard. Accordingly, the Court will not preclude Ms. Wild from offering such testimony based upon a lack of relevance, but as with Dr. McCormack and Dr. Ayo, the Court finds that Defendants' arguments regarding Ms. Wild offering testimony relating to liability or proximate cause are premature and hypothetical. Again, the Court declines to offer an advisory opinion with regard to these objections. Additionally, Ms. Wild may not offer a legal conclusion as to deliberate indifference. Finally, as to Defendants' claims that she ignored the facts of this case, the Court feels that such factual matters, the weight or lack of weight she assigned to them and the effect, if any, on her opinions are best addressed through vigorous cross-examination.

---

[3] Correctional healthcare being the very thing Defendants claimed Dr. McCormick and Dr. Ayo lacked but needed in order to testify.

Accordingly, the Defendants' request that Ms. Wild be excluded from offering testimony in this case is **GRANTED IN PART** and **DENIED IN PART**. Ms. Wild may not testify regarding deliberate indifference, in a legal sense. Otherwise, she may testify to the matters discussed in her expert report, consistent with the above, including national standards and state standards for healthcare in correctional facilities and the opinion as to whether the healthcare provided to Plaintiff met these standards or not and including the scope of practice for LPNs in Tennessee, per applicable standards, and whether, in her opinion, LPN Lester provided care within such scope.

### D. Testimony of Michael W. Quinn

Mr. Quinn is a former deputy and jailer with the Harris County Sheriff's Department. He has a bachelor of science and a masters of public administration from the University of Houston. He has been retained by Defendant Roane County to provide testimony in this case, and he has reviewed records to permit him to offer testimony in this case.

Mr. Quinn's report includes his recitation of the facts in this case. In the Statement of Opinions portion of his expert report, Mr. Quinn begins by stating: "It is my opinion beyond a reasonable degree of certainty that neither Roane County nor any other defendant was deliberately indifferent to the welfare of inmates housed at the RCSO detention facility in general, and Inmate Price in particular." [Doc. 167-1 at 10]. His opinions stated thereafter generally fall in line with this opinion by describing how Roane County provided appropriate training and management for the jail. Mr. Quinn counters Plaintiff's allegations by, for example, opining that, because Roane County has contracted with SHP, it is not in control of provision of medical services.

Plaintiffs argue that Mr. Quinn should be precluded from offering testimony as to whether Roane County was deliberately indifferent, because Berry prohibits experts from offering opinions that express legal conclusions. [Doc. 167]. Plaintiffs argue that Mr. Quinn cannot opine as to the reasonableness of the medical care provided. Plaintiffs maintain that he should be precluded from offering factual testimony regarding the acts and omissions culminating in Ms. Price's death, because such testimony is not likely to aid the trier of fact.

Roane County responds that Mr. Quinn should be permitted to provide expert testimony regarding whether Roane County should be held liable. [Doc. 183]. Roane County states that Mr. Quinn is qualified as an expert in corrections and has never been limited in testimony relating to operations in a correctional setting. Roane County concedes that the use of the term "deliberate indifference" appears to run afoul of Berry, but Roane County argues that underlying testimony regarding officer training and jail procedures is appropriate. Roane County argues that Mr. Quinn's policy is consistent with the Eighth Amendment and Fourteenth Amendment, as interpreted by the Court of Appeals for the Sixth Circuit.

There appears to be no dispute that Mr. Quinn is qualified to offer testimony as to correctional procedures, training, and protocol, and the Court finds that he is so qualified. However, even his correctional testimony must be limited to a degree. It is ironic that – after arguing, that the Plaintiffs' experts should all be precluded from providing any expert testimony regarding deliberate indifference, as legal conclusions – Roane County now takes the position that their expert should *not* be excluded from offering testimony using the same legally conclusory term: deliberate indifference. The Court finds and holds that like the other expert witnesses discussed herein, Mr. Quinn is prohibited from offering testimony regarding legal conclusions under Berry, and he shall refrain from doing so. The Court will not exclude Mr.

Quinn's testimony regarding procedures, training, and protocol in correctional facilities and there application in this case, but he may not testify that either Roane County or SHP were or were *not* deliberately indifferent. Mr. Quinn shall not testify that the behavior of either defendant was consistent with or otherwise appropriate under the United States Constitution.

With regard to Mr. Quinn's testimony about Roane County's liability, the Court finds that Mr. Quinn is not an expert in agency law or contract law, and he may not offer testimony regarding Roane County's responsibilities or liability under its agreements with SHP. This testimony, to the extent it also constitutes a legal conclusion, is barred by Berry.

The Court further finds that Roane County has not demonstrated that Mr. Quinn is a medical expert or has any medical education. Accordingly, the Court finds that he may not testify generally as to medical care that was, should, or should not have been given. He may testify as to his experience with correctional policies, protocol, and training that may overlap with medical issues, but he is not a medical expert. He may not offer opinions on specific medical care, including the medical care given or not given to Ms. Price.

Finally, consistent with the Court's comments on the record at the hearing on this issue, Mr. Quinn – like any other expert – may testify to the facts relevant to his testimony as supported by the evidence in the record. He may not offer testimony that is his version and wholesale restatement of the facts. Such testimony will not aid the trier of fact and is likely to confuse the trier of fact.

Accordingly, the Plaintiffs' request that Mr. Quinn be excluded from offering testimony in this case is **GRANTED IN PART** and **DENIED IN PART**. Mr. Quinn may testify regarding procedures, training, and protocol in correctional facilities and their application in this case, consistent with the above.

### E. Testimony of George Lyrene, M.D.

Dr. Lyrene is a physician with an undergraduate degree and medical degree from the University of Alabama. He has been retained by Roane County to offer expert testimony in this case. Dr. Lyrene has reviewed records to permit him to offer testimony in this case.

Dr. Lyrene opines that "the procedures in place for managing Ms[.] Price were appropriate and appropriately followed." [Doc. 168-1 at 2]. He states that the intake process was standard for jails that are the size of the Roane County Jail. He opines that the medical attention procedure is functional, and the access to medical personnel is adequate. He adds that the relationship between Roane County and SHP is consistent with a widely-accepted practice. Further, he asserts that: the use of isolation was appropriate; the use of a holding cell for medical observation was appropriate; and the officers' response to the emergency situation was appropriate. Dr. Lyrene concludes, "There is no evidence that anything done or omitted by the detention staff contributed in any way to her cause of death." [Id. at 3].

Plaintiffs argue that Dr. Lyrene's opinion regarding the appropriateness of Roane County's procedures, and the execution of those procedures, is inadmissible testimony regarding legal conclusions. [Doc. 168]. Plaintiffs argue that he should be excluded from so testifying. Further, Plaintiffs contend that Dr. Lyrene's testimony that there is no evidence that detention staff contributed to Ms. Price's death is a legal conclusion and should also be excluded. Plaintiffs also object to Dr. Lyrene's testimony relating to Roane County and SHP's relationship and its effect on liability.

Defendants respond that Dr. Lyrene is qualified to testify about the Roane County's policies and procedures regarding provision of medical care to inmates. [Doc. 184]. Defendants note that Dr. Lyrene worked at a correctional facility for two years and later was director of

16

clinical services for a company that provides healthcare services for the Alabama Department of Corrections. Defendants argue that Dr. Lyrene should not be excluded from giving testimony about causation and should not be excluded from testifying about legal duties.

The Court finds that Dr. Lyrene is qualified to offer opinions regarding medical care, policies, and procedures at Roane County and the extent to which those were or were not medically appropriate. He may not testify as to whether those policies, procedures, or related medical care were *legally* appropriate. He may also offer opinion testimony as to the medical propriety of the medical care that Ms. Price received in the Roane County Jail. He may testify that the medical care was adequate, appropriate, or typical, but he may not testify that the care was *legally* adequate or inadequate. He may not opine as to how much or how little evidence of wrongdoing there is in the record. The trier of fact will make that determination. Similarly, the jury or Court will decide the degree to which the contractual relationship between SHP and the Roane County Jail affects liability; Dr. Lyrene may not offer such testimony. As with the other experts, Dr. Lyrene may testify regarding facts to the extent needed to give his opinion testimony context, but he may not engage in a wholesale restatement of the facts, which is likely to confuse the trier of fact.

Accordingly, the Plaintiffs' request that Dr. Lyrene be excluded from offering testimony in this case is **GRANTED IN PART** and **DENIED IN PART**. Dr. Lyrene may offer testimony regarding policies, practices, and procedures of correctional facilities as they relate to medical care, consistent with the above.

## III. CONCLUSION

Based upon the foregoing, the parties' Daubert challenges **[Docs. 159, 161, 162, 164, 167, 168]** are **GRANTED IN PART** and **DENIED IN PART** consistent with the above.

**IT IS SO ORDERED.**

ENTER:

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge